EXHIBIT 7

# ACKER WOOD

## INTELLECTUAL PROPERTY LAW, LLC

Gwen R. Acker Wood, PhD, Esq., President
Anthony H. Handal, Esq., Of Counsel

 *Global IP Assets Protection*

Exhibit 7

March 16, 2022

<u>VIA EMAIL ATTACHMENT</u>

Anthony Doherty
SMITHDEHN LLP
100 Park Avenue, 16th Floor
New York, NY 10017

RE:  <u>"Tiger King Season 2;" Unauthorized Use of Copyrighted Artwork "Quarantine 2020"</u>

Dear Mr. Doherty:

We are in receipt of your response letter, dated February 23, 2022 (the "Letter"), to our cease and desist letter, dated February 9, 2022, regarding the above-identified matter. We strongly disagree with your contention that the Fair Use Doctrine bars our claim that Royal Goode Productions, LLC ("RGP"), the producers of the "Tiger King" documentary series ("Tiger King Series") infringed the copyrighted Joe Exotic "Quarantine 2020" tattoo artwork ("Joe Exotic Tattoo" or the "Artwork") created by our client, Molly Cramer ("our client") by using the Joe Exotic Tattoo in the Tiger King Series.

Your main argument with respect to the Fair Use Doctrine is that RGP's use of the Joe Exotic Tattoo is transformative, and thus does not infringe any rights of our client. You then encourage us to take into consideration the "Documentary Filmmaker's Statement of Best Practices in Fair Use," which states, in pertinent part, "[d]id the unlicensed use 'transform' the material taken from the copyrighted work by using it for a different purpose than the original, or did it just repeat the work for the same intent and value as the original?'"

Your assertion that the Joe Exotic Tattoo is transformative and thus does not infringe any rights of our client could not be further from the truth. In fact, our client created the Joe Exotic Tattoo for the **exact same purpose that it was used by RGP in the Tiger King Series**, namely, to exploit Joe Exotic's popularity, global recognition, and the fact that he has become a social phenomenon.

Some background of the genesis of the Joe Exotic Tattoo is in order to substantiate our contention that RGP's use of the Artwork was for the very same purpose, intent and value as that of our client. In 2020, in an attempt to raise money due to the closing of both our client's and her husband's businesses due to the Covid-19 pandemic, our client's husband came up with the idea of selling gift certificates online, whereby purchasers of the gift certificates would vote on which one of several funny tattoo pictures created by our client would be tattooed on our client's husband's thigh by our client. Both our client and her husband were viewers of the Tiger King Series and were familiar with Joe Exotic and his fame, popularity and global recognition, and thus

one of the tattoo pictures created by our client was a likeness of Joe Exotic **because of his popularity, fame and global recognition**. Our client believed that including Joe Exotic as one of the funny tattoo pictures would garner a very large response to the sale of the gift certificates because of his fame and popularity.

In fact, our client raised over $3000.00 in gift certificates and the tattoo picture that won the vote by a large margin was the image of Joe Exotic with a Lysol can, a toilet paper banner, covid spores, and entitled "Quarantine 2020." Our client tattooed the Joe Exotic Tattoo on her husband in April, 2020 and posted the Joe Exotic Tattoo the same day on her Facebook page.

Further, as you rightly state, the first factor, and the one many courts consider the most important, which is considered in determining fair use of copyrighted material is "the purpose and character" of the use, including whether such use is of a commercial nature. There is no doubt that the purpose and character of the Joe Exotic Tattoo was to create a likeness of a popular, globally recognized celebrity, and that the use by RGP of the Joe Exotic Tattoo **merely supersedes the original work** and does **not** add something new with a further purpose or a different character. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 693 (7th Cir. 2012), citing *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 585 (1994) at 579. Indeed, in your Letter you admit that "[i]n the Tiger King Series the [sic] The Tattoo is used […] as a tangible demonstration of the scale of Joe Exotic's fame." It is therefore clear that the Joe Exotic Tattoo is not being used by RGP for a transformative purpose, but rather is being used for the **exact same purpose** it was created for by our client.

The second fair use factor, which elements you allege do not "assist our claim" because you have concluded, erroneously, that "the Tattoo passes the transformation test," looks to the nature of the copyrighted work. In this regard, courts tend to give greater protection to creative works, as courts usually are more protective of art, music, poetry, feature films, and other creative works than they are of nonfiction works, and thus fair use applies more broadly to nonfiction than fiction. Although the Joe Exotic Tattoo was published, we have no doubt that the elements of the second fair use factor would "assist our claim." Also, the fact that you question whether the Joe Exotic Tattoo is a creative work by stating in your Letter "material that **might arguably** be creative in nature" (emphasis added) is disingenuous at best.

The third fair use factor involves assessment of the "amount and substantiality" of the portion of the copyrighted material which is used. According to the courts, it is axiomatic that the more an alleged infringer uses the copyrighted material, the less likely the alleged infringer is within fair use with respect to the third fair use factor. Additionally, courts have ruled that even small amounts of use may be excessive if they take the "heart of the work."

In your Letter, you state that "[t]he Tattoo is used in the Tiger King Series for a very short period of time, less than three seconds," and that "[t]he Tattoo is 'not displayed with sufficient detail for the average lay observer to identify even the subject matter of the [Tattoo], much less the style used in creating them.'" To this end, you cite *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 348 (S.D.N.Y. 2020), where use of tattoos depicted on professional basketball players in a video game were held to be fair use by the defendant. This case, however, is inapposite to RGB's use of the Joe Exotic Tattoo in the Tiger King Series. In *Solid Oak Sketches,* the tattoos were "small and indistinct" and appeared "as rapidly moving visual features of rapidly moving figures in groups of player figures." *Id.* In the Tiger King Series, the image of the Joe Exotic Tattoo, although shown for a short time, is distinct and shown clearly and in its entirety, i.e., not just the "heart of the work" is used, and the image is stationary and not moving

Anthony Doherty
March 13, 2022
3 of 4

for the time it is shown.  Further, your assertion that an average lay observer would not be able to identify even the subject matter of the tattoo because it is not displayed in sufficient detail is completely incorrect, as evidenced by the fact that our client first found out that her Joe Exotic Tattoo was being used in the Tiger King Series from many friends and family who contacted her after seeing the Joe Exotic Tattoo on the Tiger King Series.

The fourth fair use factor involves the effect of the use on the potential market for or value of the work.  In your Letter, you allege that "[t]he use of the Tattoo in an episode of the Tiger King Series is similarly too short and too small to damage the market for your client's work."  You go on to allege that, "[o]n the contrary, the portrayal of the Tattoo in the Tiger King Series is likely to increase the market demand for Ms. Cramer's Tattoo, as a new audience is introduced to it."  In fact, the exact opposite has been the case.  Because our client did not receive attribution for the use of the Joe Exotic Tattoo by RGP, the public erroneously is being led to believe that RGP created or owns the Artwork, and thus this unauthorized use has had and is having an adverse market effect for our client's Artwork.

Further, the fourth fair use factor includes determining whether an alleged infringer could have realistically purchased or licensed the copyrighted work and if so, that fact weighs against a finding of fair use.  We contend that RGP and Netflix could have purchased or licensed the Joe Exotic Tattoo from our client, but instead used it without our client's authorization and without considering her rights.  In addition, if an alleged infringer's purpose for using the copyrighted work is commercial, as your use undoubtedly is, an adverse market effect is easier to prove.  In your Letter, you state that "the transformative nature of the secondary work also comes into play […] in that "if the secondary use is significantly transformative, it will not impinge on a market available to the copyright holder and is therefore more likely to be a fair use."  Because we contend that RGP's use of the Joe Exotic Tattoo was **not** a transformative secondary use of the Artwork at all, but rather a use that merely supersedes the original work and does not add something new with a further purpose or a different character, this strengthens our contention that RGP's alleged infringement of our client's Artwork cannot be defended under the fair use doctrine and has had and is having an adverse market effect for the Artwork.

Based on the foregoing, we reiterate our demands that Netflix: (1) immediately cease and desist all use of the Joe Exotic Tattoo in the Tiger King Series and in the Tiger King Trailer; (2) provide the source from which Netflix obtained the Joe Exotic Tattoo, including, without limitation, any documents purporting to assign, license, or transfer any rights in or to the Joe Exotic Tattoo; and (3) remit a settlement payment in the amount of ten million dollars ($10,000,000.00) via cashier's check, made payable to the undersigned, **within fifteen (15) days** from the receipt of this letter to the undersigned's address shown below.

Please be advised that failure to meet these demands in the stated time shall result in our filing a complaint for Copyright Infringement in federal court against RGP and Netflix for the unauthorized use of our client's Joe Exotic Tattoo Artwork in the Tiger King Series.

Anthony Doherty
March 13, 2022
4 of 4

     This is not a full recitation of all outstanding facts and legal issues, and nothing in this letter is meant to or should be construed to waive or limit any rights, claims, or remedies.

Sincerely,

Gwen R. Acker Wood, PhD, Esq.
ACKER WOOD INTELLECTUAL PROPERTY LAW LLC
4981 McKnight Road
P.O. Box 11096
Direct: (412) 486-1038
Fax:    (412) 487-2837
Email: grwood@ackerwoodiplaw.com