# EXHIBIT 8



March 30, 2022

BY MAIL ATTACHMENT
Gwen R. Acker Wood, PhD. Esq.
Acker Wood Intellectual Property Law LLC
4981 McKnight Road
P.O. Box 11096
Pittsburgh, Pennsylvania

Re: "Tiger King Season 2" – Use of Molly Cramer's Tattoo

Dear Ms. Wood,

Thank you for your second letter (the "Letter"), dated March 9, 2022.

While we appreciate your further explanation of your client's position as set out in the Letter, we respectfully disagree with your contention that the brief inclusion of a tattoo likeness of Joe Exotic (the "Tattoo") in a montage segment in the Netflix Series "Tiger King 2" (the "Series") made by our clients, Royal Goode Productions LLC (the "Producers") does not qualify as fair use under U.S. copyright law.

The Producers' use of the Tattoo is not, as you claim, for one and the same purpose as your client's Tattoo. The Producers are makers of a factual documentary television series and are directly commenting on the impact of the first season of Tiger King and the various ways people have tried to attach themselves to that popularity. To that end they have created a montage of images, graphic effects and sounds, which show the remarkable lengths that some people will go to claim some association with the Series, even to the extent of permanently marking themselves with the image of a person they know only through a TV series. Your client's work is shown as one of many who have attempted to garner attention by association with the first series of Tiger King. There is simply no arguable case that your client created the Tattoo to make social comments on the success of a TV series while at the same time critiquing their and multiple other's attempts to profit from that success. To the best of our knowledge, your client is not a documentary filmmaker, and she does not have a record of using her art for social commentary. She did not create a montage of various Tiger King fans and fanatics to comment and reflect upon the scale of the Tiger King phenomena and to question the motivation behind the hero worship of a man convicted of attempted murder for hire and multiple acts of animal cruelty. Your client simply cannot claim to be fulfilling the same purpose as the Series, just because she created a Tattoo that featured Joe Exotic and refers to the Covid pandemic. She is not recapping and furthering the Tiger King story for the audience. She is not commenting on the Series, it's global impact, or the masses of people jumping on the Tiger King bandwagon.

Page 2 of 5
Gwen A. Acker Wood, PhD. Esq.
March 30, 2022

In the Tattoo segment (the Tattoo never appeared in any trailers or teasers for the Series), the Producers clearly are recapping the Tiger King Story so far and commenting on your client's (and many others) motives. "[B]iographies in general, and critical biographies in particular, fit 'comfortably within' these statutory categories 'of uses illustrative of uses that can be fair.'" *New Era Pubs v. Carol Publ'g Group*, 904 F.2d 152, 156 (2d Cir. 1990). "[B]iographies, of course, are fundamentally personal histories and it is both reasonable and customary for biographers to refer to and utilize earlier works dealing with the subject of the work and occasionally to quote directly from such works." *Maxtone-Graham v. Burtchaell* 803 F.2d 1253, 1263 (2d Cir. 1986). We cannot see how the intent behind your client's work bears any similarity whatsoever to the use of the Tattoo in the Series when the segment is specifically a comment on her work. *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, No. 7:18-MC-00268 (NSR), 2022 WL 160270, at *7 (S.D.N.Y. Jan. 18, 2022) ("What matters is that [Movant] used the [works] to express 'something new, with a further purpose or different character, altering the first with new expression, meaning, or message."); *see also Katz v. Google, Inc., 802 F.3d 1178, 1183 (11th Cir. 2015) ("*The use of a copyrighted work need not alter or augment the work to be transformative in nature.")

Recently the Second Circuit Court of Appeals in New York considered the issue of transformativeness in relation to items of visual art and reached the following illuminating conclusions:

"The secondary work itself must reasonably be perceived as embodying a distinct artistic purpose, one that conveys a new meaning or message separate from its source material. While we cannot, nor do we attempt to, catalog all of the ways in which an artist may achieve that end, we note that the works that have done so thus far have themselves been distinct works of art that draw from numerous sources, rather than works that simply alter or recast a single work with a new aesthetic." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith,* 11 F.4th 26, 41 (2d Cir. 2021.) Here, the Producers have incorporated a multitude of different images, added new audio and incorporated visual effects in order to create something entirely new and distinct. This is no mere repetition of the original in isolation. The segment is a montage that deals with the whole Tiger King story thus far, from Joe Exotic's incarceration, Tik-Tok dance routines, attempted presidential pardons, Carole Baskin murder conspiracists, and even those who would decorate themselves permanently with the face of a known felon just to be part of this story. We find none of these purposes in your client's work. There is nothing in the context, execution or purpose of the Producers' use of the Tattoo and the creation of this segment that is not transformative.

With regard to the second factor, your Letter seems to suggest that documentary films and their use of unlicensed materials, are not among the artforms protected by the fair use defense, and that a preference is given for other art forms over the documentary form. This is very far from the truth. "In general, fair use is more likely to be found in factual works than in fictional works. *See* 3 Nimmer § 13.05[A], pp. 13–77 to 13–78 ("[A]pplication of the fair use defense [is] greater ... in the case of factual works than in the case of works of fiction or fantasy"); cf*. Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539,

563, 105 S. Ct. 2218, 2232 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy"); *Stewart v. Abend*, 495 U.S. 207, 237–38, 110 S. Ct. 1750, 1769 (1990) (In general, fair use is more likely to be found in factual works than in fictional works."). As the Series is factual and the Tattoo has been published before, the second factor weighs heavily in the Producers' favor. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("Published works are more likely to qualify for fair use because the first appearance of the artist's expression has already occurred.") *and Harper & Row,* 471 U.S. 539, 564 (1985)

Turning to the third factor, namely the amount and substantiality of the use. As you know the use of an entire copyrighted work is permissible under fair use provided it is necessary for its intended purpose. *See Caner v. Autry,* 16 F. Supp. 3d 689, 713 (W.D. Va. 2014) (defendant's use of entire copyrighted video was necessary to fulfill his transformative purpose of pointing out contradictions.). In fact, the very nature of an image such as the Tattoo means that it must be used in its entirety. *See Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1178 (9th Cir. 2013) ("Scream Icon [a drawing of a screaming, contorted face] is not meaningfully divisible. Given that fact, this court has acknowledged that this factor will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use"). *See also, Am. Soc'y of Cinematographers, a California corporation, Plaintiff, v. Howard Schatz, et al., Defendants. Howard Schatz, et al.*, Counterclaimants, No. 220CV08607ODWJCX, 2021 WL 4352302, at *4 (C.D. Cal. May 25, 2021) (a photograph as opposed to a song or an episode of a television show is not meaningfully divisible; hence the use of an entire photograph was construed necessary to achieve its intended purpose); *Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*, No. SA CV 16-00226-DFM, 2019 WL 13036416, at *4 (C.D. Cal. Mar. 1, 2019), *aff'd*, No. 19-55264, 2021 WL 3721438 (9th Cir. Aug. 23, 2021.) ("with respect to images or photographs, [ ] all or most of the work often must be used in order to preserve any meaning"). There seems very little way for the Producers to point out the extremes that individuals will go to gain some attention by association with the Series, than to clearly show that such individuals have permanently marked their body with the image of a convicted criminal.

On the subject of the fourth factor, we have searched the relevant case law and have found nothing that supports your claim that the ability to license and a failure to do so is fatal to a fair use defense. In fact, the caselaw on the fourth factor indicates that because the appearance of the Tattoo in a documentary television series is directed at a vastly different audience from the fixing of an image in ink on an individual's skin, it is unlikely to affect any market for your client's work. We can see no meaningful or significant effect caused by the Producers' use "upon the potential market for or value of the copyrighted work." *Authors Guild v. Google, Inc.,* 804 F.3d 202, 224 (2d Cir. 2015). Therefore, contrary to your claims, the fourth factor strongly favors the Producers. There can be no serious argument that your client's potential customers would decide to forego a tattoo of Joe Exotic in favor of watching three seconds of the Series. *See O'Neil v. Ratajkowski*, No. 19 CIV. 9769 (AT), 2021 WL 4443259, at *10 (S.D.N.Y. Sept. 28, 2021) (the fourth factor analyzes whether the copy brings to the marketplace a competing substitute for the original) *See also, Red Label Music Publ'g, Inc. v. Chila Prods.,* 388 F. Supp. 3d 975, 986-

Page 4 of 5
Gwen A. Acker Wood, PhD. Esq.
March 30, 2022

988 (N.D. Ill. 2019). Given the above, we are convinced that the use of the Tattoo is transformative; that all four fair use factors strongly favor the Producers' position; and that your client's claim is without merit.

Finally, your Letter makes a demand for the immediate payment of ten million dollars. Given this figure, we assume that you intend to pursue actual damages in court. If that is the case, your client would therefore need to prove lost profits, the value of a license fee and loss of goodwill and future sales to that extent. Given that a standard license fee for an item of this duration would be less than $500 and that you have referenced a total of $3,000 generated from the sale of tokens, not the Tattoo itself, there seems to be a substantial shortfall in any calculation of actual damages. You have attempted to fill this shortfall with a calculation based on Netflix gross revenue. Your client's claimed damages have no nexus to the gross revenue of Netflix. The portrayal of the Tattoo in the Series, in a small section of the screen alongside numerous other items, for less than three seconds, has no connection to Netflix's profits or gross revenue. The Series is only one of thousands of shows on Netflix and this episode makes up less than 1 hour of the tens of thousands of hours and millions of minutes of entertainment available on this platform. Additionally, your client's work appears on screen with seven other items. This miniscule appearance can hardly be seen as having any association with Netflix profits. Your client cannot show a reasonable link between the alleged copyright infringement and Netflix's revenue such that a court would contemplate awarding damages on anything approximating the scale you demand. *See On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001), as amended (May 15, 2001) (the court found that "gross revenue" under the statute means gross revenue reasonably related to the infringement, not unrelated revenues.) *See also, Alexander v. Take-Two Interactive Software, Inc.,* 489 F. Supp. 3d 812, 823 (S.D. Ill. 2020) *quoting Bell v. Taylor,* 827 F.3d 699, 709, 710(7th Cir. 2016)*. (*at a minimum, the plaintiff must prove a causal connection or nexus between the infringement and defendant's gross revenues); *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514 (4th Cir. 2003) (where there is "no conceivable connection between the infringement and the claimed revenues," *Bouchat* demands that summary judgment must be granted in favor of the alleged infringer.)

We trust that in view of the above, you will advise your client accordingly and withdraw this claim.

Please also note that this letter does not contain a complete statement of the Producers' position in this or any other matter, nor does it constitute a waiver of any of the Producers' legal or equitable rights, all of which are expressly reserved. If you have any further questions or concerns not addressed above, please let us know.

Sincerely,

Anthony Doherty

Page 5 of 5
Gwen A. Acker Wood, PhD. Esq.
March 30, 2022

tdoherty@smithdehn.com