## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MOLLY CRAMER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:22-cv-131 ) Judge Stephanie L. Haines ) |
| NETFLIX, INC. and ROYAL GOODE PRODUCTIONS, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**SMITHDEHN LLP**

Russell A. Smith
Admitted *Pro Hac Vice*
New York Bar No. 2063378
654 San Juan Avenue
Venice Beach
Los Angeles, California 90291
Telephone: (917) 239-5047
rsmith@smithdehn.com

**HOUSTON HARBAUGH, P.C.**

Henry Sneath
sneathhm@hh-law.com
PA ID No. 40559
Corey A. Bauer
bauerca@hh-law.com
PA ID No. 324632
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-2216

*Attorneys for Defendants Netflix Inc. and Royal
Goode Productions, LLC*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND............................................................................................ 3

ARGUMENT ................................................................................................................... 5

   I.  STANDARD OF REVIEW ....................................................................................... 5

  II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT
       INFRINGEMENT BECAUSE INCLUSION OF THE TATTOO IS FAIR USE.... 6

    1.  Purpose and Character of the Use Weighs in Favor of Fair Use.......................... 7

    2.  The Nature of the Copyrighted Work Weighs in Favor of Fair Use.................. 11

    3.  Amount and Substantiality of Portion Used Weighs in Favor of Fair Use........ 12

    4.  The Effect Upon the Potential Market Weighs in Favor of Fair Use................. 14

CONCLUSION ............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994) ................................................................................... 5

*Arica Institute, Inc. v. Palmer*,
   761 F. Supp. 1056 (S.D.N.Y.1991), *aff'd*, 970 F.2d 1067 (2d Cir.1992) ........................... 11

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006) .............................................................. 11, 13, 14, 15

*Blanch v. Koons*,
   467 F.3d 224 (2d Cir. 2006) ........................................................................ 11, 14

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
   737 F. 3d 932 (4th Cir. 2013) ...................................................................... 11, 13

*Brownmark Films LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) .......................................................................... 6, 7

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................................ 2, 7, 8, 14

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013) ......................................................................... 7, 14

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998) ..................................................................... 8, 12, 16

*Consumers Union of United States, Inc. v. General Signal Corp.*,
   724 F.2d 1044 (1984) .................................................................................... 15

*Energy Intel. Grp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied*
   *Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, No. CIV.A. 11-00428, 2013 WL
   4648333 (W.D. Pa. Aug. 29, 2013) ....................................................................... 8

*Ethypharm S.A. France v. Abbott Labs.*,
   707 F.3d 223 (3d Cir. 2013) ............................................................................. 5

*Google LLC v. Oracle Am., Inc.*,
   209 L. Ed. 2d 311, 141 S. Ct. 1183 (2021) ............................................................... 7

*Hofheinz v. AMC*,
   147 F. Supp. 2d 127 (E.D.N.Y. 2001) ................................................................... 10

*Hosseinzadeh v. Klein*,
   276 F. Supp. 3d 34 (S.D.N.Y. 2017) .................................................................... 15

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   184 F.3d 280 (3d Cir. 1999) ............................................................................. 5

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ............................................................... 6

*Leibovitz v. Paramount Pictures Corporation*,
   2000 WL 1010830 (S.D.N.Y. 2000)...................................................... 12

*Lennon v. Premise Media Corp.*,
   556 F. Supp. 2d 310 (S.D.N.Y. 2008) ........................................... 10, 15

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ................................................................ 12

*Monster Communications, Inc. v. Turner Broadcasting System, Inc.*,
   935 F. Supp. 490 (S.D.N.Y. 1996) ....................................................... 11

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011) .................................................................. 7

*New Era Publications Intern., ApS v. Carol Pub. Group*,
   904 F.2d 152 (2d Cir. 1990)................................................................. 11

*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
   868 F. Supp. 2d 962 (C.D. Cal. 2012) .................................................. 8

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18 (1st Cir. 2000) .................................................................. 13

*NXIVM Corp. v. Ross Inst.*,
   364 F.3d 471 (2d Cir. 2004) ................................................................ 15

*On Davis v. The Gap, Inc.*,
   246 F.3d 164 (2d Cir. 2001) .................................................................. 8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) .................................................................... 5

*Pro Arts, Inc. v. Hustler Magazine, Inc.*,
   787 F.2d 592 (6th Cir. 1986) ............................................................... 12

*Pro Arts, Inc.*, 787 F.2d 592 (6th Cir. 1986) .......................................... 15

*Salinger v. Random House, Inc.*,
   811 F.2d 90 (2d Cir. 1987) .................................................................. 11

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)................................................................... 6

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013) .......................................................... 9, 13

*Sentinel Trust Co. v. Universal Bonding Ins.*,
   316 F.3d 213 (3d Cir. 2003) .................................................................. 6

*Sheridan v. NGK Metals Corp.*,
    609 F.3d 239 (3d Cir. 2010) ................................................................................. 5

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) .............................................................................. 10

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    449 F. Supp. 3d 333 (S.D.N.Y. 2020) ................................................................. 13

*Stewart v. Abend*,
    495 U.S. 207 (1990) .............................................................................................. 7

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014) ................................................................................... 6

*Tanikumi v. Walt Disney Co.*,
    616 F. App'x 515 (3d Cir. 2015) .......................................................................... 5

*Tanksley v. Daniels*,
    902 F.3d 165 (3d Cir. 2018) ................................................................................. 5

*Warren Pub. Co. v. Spurlock*,
    645 F. Supp. 2d 402 (E.D. Pa. 2009) ............................................................. 12, 13

*Whyte Monkee Prods. v. Netflix, Inc.*,
    No. CIV-20-933-D, 2022 WL 1251033 (W.D. Okla. Apr. 27, 2022) ............. 3, 15

*World Wrestling Fed'n Ent. Inc. v. Big Dog Holdings, Inc.*,
    280 F. Supp. 2d 413 (W.D. Pa. 2003) ................................................................. 13

**Statutes**

- 17 U.S.C. § 107 ................................................................................. 6, 7, 10, 11, 12

**Rules**

- Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 2, 5

**Other Authorities**

- 2 Howard B. Abrams, The Law of Copyright § 15:52 (2006) ........................... 11

Defendants Netflix Inc. ("Netflix") and Royal Goode Productions, LLC ("RGP") (collectively, the "Defendants"), respectfully submit this brief in support of their motion to dismiss the complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Molly Cramer ("Cramer") created a tattoo (the "Tattoo") featuring disgraced zookeeper "Joe Exotic," who became world famous due to his appearance in the Netflix biographical documentary series, "Tiger King: Murder, Mayhem and Madness" (the "Series" or the "Tiger King Series"). The Series reports on questionable big cat conservation activities, the exploitation of wild animals for profit, and the variety of dubious persons this business attracts, most notoriously, Joe Exotic.

In her own words, Cramer created the Tattoo, inked it onto her husband's thigh, and publicized it on social media "because of Joe Exotic's popularity, notoriety, and global recognition."  Cramer believed that "a funny picture of Joe Exotic for tattooing on her husband would receive a very large response by the public for the online sale of... gift certificates" for her tattoo business.[1]

This Complaint arises from the first episode of the second season of Tiger King (the "Episode"), which addresses Joe Exotic's life story, culminating in his unsuccessful campaign for a presidential pardon. The Tattoo appears in that 43-minute Episode for only 2.2 seconds, with reduced size, in a corner of the screen, as one of a series of dozens of images showing how the Tiger King phenomena gripped the public's imagination. Given that there are eight, equally sized images on the screen (including the Tattoo), viewers of the Episode are allowed approximately one-fourth of a second to glimpse the Tattoo. This assumes viewers noticed the Tattoo at all.

---

[1] *See* Complaint ("Compl.") at ¶12.

The Complaint's copyright claims fail as a matter of law because Defendants' brief use of the Tattoo is protected by the fair use doctrine.  Consistent with U.S. Supreme Court precedent, federal courts across the country apply fair use principles to dismiss copyright infringement claims at the pleading stage.  Dismissal is appropriate where the use at issue is "transformative." In the words of the Supreme Court, the question is "whether the new work merely 'supersede[s] the objects' of the original creation ('supplanting' the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.... [or] in other words, whether and to what extent the new work is 'transformative.'"[2]

Here[3], Defendants' use is clearly transformative. Cramer's expressly stated purpose was to capitalize on Joe Exotic's notoriety to sell gift certificates for her tattoos.  That bears no relation to the Defendants' purpose of documenting the life story of Joe Exotic and in particular, showing the zealotry of his fans. The Defendants' 2.2-second use of the Tattoo does nothing to "supplant the original," because it plainly has nothing to do with selling gift certificates or tattoo services. The Defendants' use has an entirely new and different, biographical purpose, as well as a different meaning and message, namely, helping to show that Joe Exotic accumulated a mass following of fanatical viewers.

Cramer's non-copyright claim also fails. Cramer alleges emotional distress allegedly caused by her reading of letters sent to her counsel by the Defendants' counsel, in which the Defendants declined to comply with her demand for $10 million, or to acquiesce to her later reduced demand for $50,000. This claim is frivolous and should be dismissed.

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[2] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

[3] In Rule 12(b)(6) motions in copyright cases in the Third Circuit, as in other circuits, it is permissible and even routine for courts to compare the two works at the pleading stage, even where the allegedly infringing work is not attached to the complaint. Here, the allegedly infringing Episode is at the heart of Cramer's case. It is referenced repeatedly in her Complaint. Accordingly, the Defendants have followed Third Circuit precedent by providing the Court with DVD and USB flash drive copies of the Episode at issue, with the written consent of Plaintiff's counsel.

## FACTUAL BACKGROUND

**Tiger King Season 1**: The first season, entitled "Tiger King: Murder, Mayhem, and Madness," was released in March 2020 [Compl. ¶¶ 9,11]. As Cramer alleges, "the series deals with the life of former zookeeper and convicted felon 'Joe Exotic,' also known as 'The Tiger King,' whose real name is Joseph Allen Maldonado-Passage." [Compl. at ¶12]. As recently stated by another federal court (which dismissed a copyright claim involving the Series on the grounds of fair use): "As anyone who has watched *Tiger King* can attest, its subtitle is not hyperbole. The series features several individuals who own tigers and other exotic animals, but mainly focuses on the Tiger King himself - Joe Exotic - and his acrimonious rivalry with self-styled animal activist Carol Baskin." *Whyte Monkee Prods. v. Netflix, Inc.*, No. CIV-20-933-D, 2022 WL 1251033 (W.D. Okla. Apr. 27, 2022) (use of plaintiff's video clips in Tiger King was fair use).

**The Tattoo**: Plaintiff Cramer is the owner of "Petals and Pain Tattoo Parlor," located in Somerset, Pennsylvania. [Compl. at ¶ 6]. On April 5, 2020, Cramer inked the Tattoo onto her husband's thigh and publicized it on social media. [Compl. at ¶14]. She "believed that because of Joe Exotic's popularity, notoriety, and global recognition, ... a funny picture of Joe Exotic for tattooing on her husband would receive a very large response by the public for the online sale of... gift certificates" for Cramer's tattoo business. [Compl. at ¶12].

**The Episode**: The second season of Tiger King was released in November 2021. The Episode at issue is the first episode of Season 2, and features the life story of Joe Exotic. [*See* Copy of the Episode submitted as exhibit "A" to the Declaration of Russell Smith in support of Defendants' Motion to Dismiss the Complaint ("Ex. A to Smith Decl.")]. The Tattoo appears in the Episode for only 2.2 seconds in a corner of the screen as one of a series of dozens of images showing how Joe Exotic and the Tiger King phenomena gripped the imagination of the public. [*See* Ex. A to Smith Decl.].

The segment including those images is prefaced by audio commentary from Joe Exotic, saying: "Animal people are nuts, man, and I might be one of them people." [*See* Ex. A to Smith Decl.]. This sound bite launches a rapid-fire sequence of people imitating Joe Exotic, as well as a quick barrage of Joe Exotic/Tiger King images created by the public, including memes, paintings, murals, performances, and the Tattoo. [*See* Ex. A to Smith Decl.]. The Tattoo is shown in reduced size in a corner of the screen with seven other images for 2.2 seconds (the "Montage"). The segment ends with audio commentary from a news reporter, saying about Joe Exotic and his fans: "People cannot get enough of his feud with Carol Baskin." [*See* Ex. A to Smith Decl.].[4]

A screenshot of the 2.2-second part of the Montage that includes the Tattoo (in the lower lefthand corner) is presented below:



On August 11, 2022, Cramer filed this Complaint.

---

[4] This refers to rival big cat captor, Baskin, whom Joe Exotic accuses of murdering her previous husband and feeding his body to tigers. *Id*. As conveyed in the Episode, Joe Exotic was convicted and imprisoned for hiring assassins to murder Baskin, as well as for 17 counts of animal abuse. *Id*.

## ARGUMENT

## I.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ethypharm S.A. France v. Abbott Labs*., 707 F.3d 223, 231 n.14 (3d Cir. 2013)*, citing Sheridan v. NGK Metals Corp*., 609 F.3d 239, 262 n.27 (3d Cir. 2010). In the Third Circuit, affirmative defenses (such as fair use) may constitute a basis for dismissal under Rule (12)(b)(6). *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 860 (3d Cir. 1994) ("It makes sense to allow an affirmative defense to be raised in a motion to dismiss because of the obvious advantage of raising a potentially dispositive issue by preliminary motion instead of requiring a responsive pleading") (internal citations omitted).

It is appropriate to dismiss copyright infringement cases at the pleading stage where "no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018), *citing Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir. 2010). In copyright cases, "a district court is permitted to consider the disputed works in deciding a Rule 12(b)(6) motion." *Tanikumi v. Walt Disney Co*., 616 F. App'x 515, 519 (3d Cir. 2015); *see also Tanksley,* 902 F.3d at 172 ("In justifying dismissals of copyright infringement claims," courts "are not limited to the four corners of the complaint, but also may consider evidence 'integral to or explicitly relied upon' therein"), *citing In re Rockefeller Ctr. Props., Inc. Sec. Litig*., 184 F.3d 280, 287 (3d Cir. 1999) (emphasis omitted). "The copyrighted and allegedly infringing works will necessarily be integral to an infringement complaint and are therefore properly considered under Rule 12(b)(6)." *Id.*  "[A] defendant may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims." *Sentinel Trust Co. v. Universal Bonding Ins*.,

316 F.3d 213, 216 (3d Cir. 2003). "A 'document integral to or explicitly relied upon in the complaint' may be considered." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal citations omitted). Because the Episode forms the alleged factual basis of the Complaint [*See* Compl. at ¶16], it is appropriate for the Court to consider the episode as part of this Motion.[5]

A simple comparison between the Episode and the Tattoo (which is reflected in the Complaint) is all that is necessary for the Court to dismiss the Complaint as a fair use. *See Brownmark Films LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) ("the only two pieces of evidence needed to decide the question of fair use [at this early stage of the proceedings] are the original version of [the plaintiff's work] and the episode at issue"); S*watch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 86 (2d Cir. 2014) (affirming the District Court's pre-discovery fair use ruling, noting that the "discovery [plaintiff] seeks would not alter our analysis"); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (fair use issue could be considered on a motion to dismiss if no material facts were in dispute).

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT BECAUSE INCLUSION OF THE TATTOO IS FAIR USE

The Defendants' inclusion of the Tattoo in the Episode plainly constitutes fair use, which is a complete defense to claims of copyright infringement. Section 107 of the Copyright Act expressly provides that "the fair use of a copyrighted work … for purposes such as criticism, comment [or] news reporting … is not an infringement of copyright." 17 U.S.C. § 107.

Fair use is an "'equitable rule of reason' that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google LLC v. Oracle Am., Inc.*, --- U.S. ----, 209 L. Ed. 2d 311, 141 S.

---

[5] With the consent of the Plaintiff's counsel, the Defendants have submitted DVD and USB flash drive copies of the Episode to the Court as part of their simultaneously filed Request for Judicial Notice.  While Defendants request that the Court watch the entire Episode for context, the use at issue can be found at time stamps 00:58 - 01:00.

Ct. 1183, 1196 (2021), *citing Stewart v. Abend*, 495 U.S. 207, 236 (1990) (internal quotation marks omitted); *see also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 306 (3d Cir. 2011).

In determining whether the use made of a work in any particular case is fair use, the factors to be considered shall include—

1. the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
2. the nature of the copyrighted work;
3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
4. the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "The four statutory factors are to be explored and weighed together in light of copyright's purpose...." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (citations omitted). Here, the four factor analysis weighs overwhelmingly in favor of a finding of fair use.

### 1. The Purpose and Character of the Use Weighs in Favor of Fair Use

Central to determining the purpose and character of a work is whether the new work merely supersedes the original work, or instead adds something new with a further purpose or of a different character. *Brownmark Programs, LLC v. Comedy Partners*, 682 F.3d 687, 693 (7th Cir. 2012), *citing Campbell,* 510 U.S. 569, 579. "The law imposes no requirement that a work comment on the original or its author in order to be considered transformative." *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013). "Instead, ... to qualify as a fair use, a new work generally must alter the original with 'new expression, meaning, or message.'" *Id.*, *quoting Campbell*, 510 U.S. at 579. In other words, the Court must consider whether the allegedly infringing work is "transformative."

"If [the original] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings — this is the very type of

activity that the fair use doctrine intends to protect...." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.,* 150 F.3d 132, 141 (2d Cir. 1998) (internal marks and citation omitted).

"The more transformative the work is from the original, the less significant the other factors will be, and it is more likely that a finding of fair use will be made." *Energy Intel. Grp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, No. CIV.A. 11-00428, 2013 WL 4648333, at *15 (W.D. Pa. Aug. 29, 2013), *citing Campbell,* 510 U.S. 569, 580.

Transformative use is at "the heart of fair use inquiry." *On Davis v. The Gap, Inc.*, 246 F.3d 164, 171 (2d Cir. 2001) *as amended* (May 15, 2001); *see also Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 970 (C.D. Cal. 2012), *citing Campbell,* 510 U.S. 569 (transformative works advance the goals of copyright law, and thus they are at the "heart of the fair use doctrine's breathing space within the confines of copyright").

Here, the use of the Tattoo is plainly transformative. The Episode in which the Tattoo appears focuses on the life of Joe Exotic. [Compl. at ¶ 12; Ex. A to Smith Decl.]. The first few minutes of the Episode include images and footage from some of the more strange online postings relating to the Series and to Joe Exotic, as a means to give the audience a sense of the nature and scale of the public's bizarre reaction to the Joe Exotic phenomenon. [Ex. A to Smith Decl.]

In order to report and comment on these activities by members of the public, the Defendants have integrated a multitude of different images and clips of footage, while adding audio and visual effects to create an entirely new work. [Ex. A to Smith Decl.]. The Tattoo is not merely displayed in isolation. The Episode takes a multitude of various sources, of which the Tattoo is only one, and uses them to weave together a synopsis of the whole Tiger King story thus far, including Joe Exotic's conviction, the public investment in his personality, his

supporters' attempt to obtain a presidential pardon for him, the Carole Baskin murder conspiracists, and even showing those (such as Cramer's husband) who have decorated their bodies permanently with the face of a known felon in reaction to the story. *Id.*

The Episode includes all of this, while simultaneously commenting on the whole spectacle. *Id.* The fleeting image of the Tattoo is part of a larger commentary about Joe Exotic, his "public," and the unusual world in which he is the center of attention. *Id.*

In the Complaint, Cramer identifies her very different purpose: she created the Tattoo to capitalize on the popularity, notoriety, and fame of Joe Exotic in order to sell gift certificates for tattoo services. *See* Compl. at ¶ 12, in which she alleges: "Ms. Cramer believed that because of Joe Exotic's popularity, notoriety, and global recognition... a funny picture of Joe Exotic for tattooing on her husband would receive a very large response by the public for the online sale of the gift certificates."

Accordingly, the use of the Tattoo in the Episode serves a new role far removed from the original purpose and is plainly transformative.

In *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013), where the Ninth Circuit Court ruled in favor of fair use, the rock band "Green Day" used the plaintiff's art work as "raw material" for "what is essentially a street-art focused music video about religion and especially about Christianity." *Id.* at 1176-77. The plaintiff's original use did not involve commentary about religion. Accordingly, the Circuit Court found that the purposes of the defendant rock band's use were "plainly distinct from those of the original piece." *Id.* at 1176-77.

Likewise here, Cramer's creation and use of the Tattoo for her stated purpose of trading on Joe Exotic's image to sell gift certificates for tattoo services are "plainly distinct" from the defendants' biographical purpose of commenting and reporting on the zealotry of Joe Exotic's fans.

In another decision upholding fair use, *SOFA Ent., Inc. v. Dodger Prods., Inc.,* 709 F.3d 1273, 1276 (9th Cir. 2013), the defendants used "a seven-second clip of Ed Sullivan's introduction of the Four Seasons on *The Ed Sullivan Show*" as a "biographical anchor," in their musical about the band, titled *Jersey Boys*, "to mark a historical point in the band's career." The Circuit Court found in favor of fair use, holding that "because [the defendants'] use of the clip is transformative, the fact that *Jersey Boys* is a commercial production is of little significance." *Id*. at 1278-79.

Similarly, in the case here, the defendants have not displayed the Tatttoo in isolation, or for Cramer's original purpose of promoting her tattoos, but rather as a historical reference point, forming part of the biography of Joe Exotic, along with many other images that also showed the lengths to which his fans would go to celebrate his fame. *See also Hofheinz v. AMC*, 147 F. Supp. 2d 127, 137 (E.D.N.Y. 2001) ("defendants' Documentary... does not merely purport to supersede the original works at issue, but to create a new copyrightable documentary"); *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 323 (S.D.N.Y. 2008) (relying on fair use to deny injunction against distribution of a documentary film, finding that, where 15 seconds from John Lennon's song, "Imagine," was used as "'fodder' for social commentary," such use was transformative).

Furthermore, the purpose and character of the Defendants' use of the Tattoo as part of a Montage reporting on presidential pardons, a murder for hire prosecution, and the public's support for a convicted felon, unquestionably constitutes "criticism, comment, [or] news reporting," which are types of fair use made explicit in the Copyright Act, 17 U.S.C. § 107.

This is even more true here, where both the alleged use and the Episode are part of a biographical documentary series. It is well-established by the federal courts that material of a biographical nature in particular "undeniably constitutes a combination of comment, criticism, scholarship and research, all of which enjoy favored status under § 107." *Monster*

*Communications, Inc. v. Turner Broadcasting System, Inc.*, 935 F. Supp. 490, 493-494 (S.D.N.Y. 1996), *quoting Arica Institute, Inc. v. Palmer,* 761 F. Supp. 1056, 1067 (S.D.N.Y.1991), *aff'd,* 970 F.2d 1067 (2d Cir.1992) (television network's biography of Muhammad Ali "undeniably constitute[d] a combination of comment, scholarship and research, all of which enjoyed favored status under § 107"); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) ("courts have frequently afforded fair use protection to the use of copyrighted material in biographies, recognizing such works as forms of historic scholarship, criticism, and comment that require incorporation of original source material for optimum treatment of their subjects"); *New Era Publications Intern., ApS v. Carol Pub. Group*, 904 F.2d 152, 156 (2d Cir. 1990) (biographical materials fit "comfortably within" these statutory categories "of uses illustrative of uses that can be fair"), *quoting Salinger v. Random House, Inc*., 811 F.2d 90, 96 (2d Cir. 1987) (biographical material considered "criticism," "scholarship," and "research"); *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F. 3d 932, 944 (4th Cir. 2013) (recognizing that documentaries satisfy Section 107's standards because they combine comment, criticism, news reporting and scholarship).

Accordingly, this first factor weighs heavily in favor of a finding of fair use.

## 2. The Nature of the Copyrighted Work Weighs in Favor of Fair Use

The second factor of the fair use analysis requires the Court to consider "the nature of the copyrighted work." 17 U.S.C. § 107(2). Courts consider "(i) whether the work is expressive or creative, ... with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (ii) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch v. Koons*, 467 F.3d 224, 256 (2d Cir. 2006), *quoting* 2 Howard B. Abrams, The Law of Copyright § 15:52 (2006).

Even if the Tattoo is a creative work, such a fact is not dispositive. Courts have favored fair use even when the copyrighted work is a creative work normally entitled to stronger protection. *See Pro Arts, Inc. v. Hustler Magazine, Inc*., 787 F.2d 592 (6th Cir. 1986) (holding that defendant's reproduction of plaintiff's photograph in an advertisement constituted fair use).  "[T]his factor may be of less (or even of no) importance when assessed in the context of certain transformative uses." *Castle Rock Entertainment, Inc., v. Carol Publishing Group, Inc*., 150 F.3d 132, 144 (2d Cir.1998); *see also Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 423 (E.D. Pa. 2009) (in a case involving a biographical work that included unlicensed copies of illustrative art works, the Pennsylvania Federal Court held in favor of fair use, finding that the second factor "weighs slightly in favor of Plaintiffs, but it is of limited relevance because of the prior finding that [Defendant's] work is transformative"); *Leibovitz v. Paramount Pictures Corporation*, 2000 WL 1010830, *4 (S.D.N.Y. 2000) (in a case involving a Vanity Fair cover photograph of actress Demi Moore by acclaimed photographer Annie Leibovitz, the Court disregarded the second factor, noting that it is well established that the nature of the copyrighted work is not very important to the fair use analysis); *Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 803 (9th Cir. 2003) (in a case involving alleged infringement of a "creative work," namely, the "Barbie" doll face and figure, the Court described the second factor as "not… terribly significant in the overall fair use balancing").

The second factor is either neutral or weighs in favor of fair use.

### 3.  Amount and Substantiality of the Portion Used Weighs in Favor of Fair Use

The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" are reasonable in relation to the purpose of the copying. 17 U.S.C. § 107(3); *see World Wrestling Fed'n Ent. Inc. v. Big Dog Holdings, Inc.*,

280 F. Supp. 2d 413, 428 (W.D. Pa. 2003) (holding that defendant's use of photographs of wrestling characters owned by the plaintiff was reasonable and constituted fair use).

With respect to photographs and similar visual works, even the copying of an entire work "does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*, 448 F.3d at 613; *see Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 424 (E.D. Pa. 2009) (use of the complete photographs on a magazine cover was reasonable and constituted fair use).

Here, the use of the entire Tattoo is amply justified. The Tattoo is used for the transformative purpose of describing the lengths viewers have gone to associate themselves with Joe Exotic, and the scope of the public's investment in Joe Exotic and the Series. Considering this purpose, it would have made little or no sense for the Defendants to copy just a portion of the Tattoo, as that would not have served to realistically depict Joe Exotic's likeness used in the Tattoo. The fact that Cramer would go to the extreme of permanently marking her husband's body with the image of a stranger and a convicted felon could not be adequately conveyed by the use of only a portion of the Tattoo. *See Solid Oak Sketches, LLC v. 2K Games, Inc*., 449 F. Supp. 3d 333, 349 (S.D.N.Y. 2020) (copying of the entire tattoo of basketball players in a video game was held to be fair use); *Bouchat,* 737 F.3d at 949 (finding it was necessary to include the logo in displays showing the NFL's history and noting, "It is hard to see frankly how the use of one-third or two-thirds of the logo is even practical or makes any sense"); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) (where the use of plaintiff's illustration of a screaming face in a video backdrop of the defendant's stage show was held fair use, the court found that, unlike a television program or book, images are "not meaningfully divisible"); *Nunez v. Caribbean Int'l News Corp*., 235 F.3d 18, 24 (1st Cir. 2000) (copying less than entire photograph "would have made the picture useless to the story").

Moreover, it is well-established that where, as here, images are reproduced in a "reduced size," the "visual impact of their artistic expression is significantly limited," which indicates that the use "is tailored to further [the defendant's] transformative purpose." *Bill Graham Archives*, 448 F.3d at 611 ("While the small size is sufficient to permit readers to recognize the historical significance of the posters, it is inadequate to offer more than a glimpse of their expressive value.... In short, [the defendant] used the minimal image size necessary to accomplish its transformative purpose"). Similarly in the situation here, the Tattoo is shown as less than life-size, and only for 2.2 seconds, along with seven other images on screen, having the effect that the viewers are given at most only a quarter-of-a second glimpse of the Tattoo's expressive value, if any. [Ex. A to Smith Decl.]

Accordingly, the amount and substantiality factor of the fair use analysis favors the Defendants.

### 4.   The Effect Upon the Potential Market Weighs in Favor of Fair Use

Finally, the fourth factor also favors fair use because the 2.2-second Montage of images, showing the Tattoo in reduced size in a corner of the screen, is plainly no substitute for the original Tattoo. In analyzing the fourth factor, courts have made it "clear that [it] is *not* whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use *usurps* the market of the original work.'" *Cariou*, 714 F.3d 694, 708 (2d Cir. 2013), *quoting Blanch*, 467 F.3d 244 at 258.

A secondary use "usurps" the original market only "where the infringer's target audience and the nature of the infringing content is the same as the original." *Id.* at 709. Further, the law does not recognize a derivative market for critical works. *Campbell*, 510 U.S. 569, 592 (1994). Market harm caused by effective criticism that suppresses demand is not cognizable. *Id*. Instead, the only kind of cognizable harm is market substitution – i.e., where the new work diminishes demand for the original work by acting as a substitute for it.

*Id*. In other words, "[t]he focus... is on whether defendants are offering a market substitute for the original." *NXIVM Corp. v. Ross Inst.,* 364 F.3d 471, 481 (2d Cir. 2004).

Because the Defendants' use of the Tattoo for commentary, reporting, and criticism on the subject of zealous fans of Joe Exotic is transformative and no way supersedes or takes the place of the Tattoo, the market for the Tattoo or the plaintiff's related gift certificates could not be harmed in any legally actionable way. *See Whyte Monkee Prods. V. Netflix, Inc*., No. CIV-20-933-D, 2022 WL 1251033 (W.D. Okla. Apr. 27, 2022), at *13, *quoting Campbell*, 510 U.S. 569 (in a decision finding fair use of unlicensed, copyright-protected footage in the Tiger King Series, the District Court stated that "when 'the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred'"); *see also Pro Arts, Inc.*, 787 F.2d 592 (6th Cir. 1986), *quoting Consumers Union of United States, Inc. v. General Signal Corp*., 724 F.2d 1044, 1050-51 (1984) ("The theory behind copyright laws is that creation will be discouraged if demand can be undercut by copiers. Where the copy does not compete in any way with the original, this concern is absent"); *Lennon,* 556 F. Supp. 2d 310, 327 (S.D.N.Y. 2008), *citing Bill Graham Archives*, 448 F.3d 605, 614-615) (noting that, where a use is transformative and therefore falls within a transformative market, there can be no harm to a plaintiff's market for licensing the copyrighted work).

As shown above, the Defendants' use was highly transformative and cannot substitute for the original Tattoo in any way. The Episode showed only a small, fleeting glimpse of the Tattoo, in a corner of the screen, along with additional audio and visual elements, as part of the larger Montage of images lasting for only 2.2 seconds. [*See* Ex. A to Smith Decl.]. Such a copy cannot usurp the market for the original Tattoo. *See, e.g.*, *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47 (S.D.N.Y. 2017) (where the video of the defendant did not serve as a market substitute for the plaintiff's video – the defendant's video, which responds to and transforms

the plaintiff's video from a skit into fodder for caustic, moment-by-moment commentary was not considered as a substitute to the original and accordingly did not "usurp a market that properly belongs to the copyright-holder").

Consequently, this fourth fair use factor also weighs decisively in the Defendants' favor.

To conclude, the Court should consider all factors as a whole and must evaluate "whether the copyright law's goal of 'promoting the Progress of Science and useful Arts'… would be better served by allowing the use than by preventing it." *Castle Rock*, 150 F.3d at 141 (citations omitted).  We respectfully submit that it should be evident from viewing the Episode that the Defendants use of the Tattoo in a transformative critique is exactly the type of use envisioned and protected by the fair use doctrine codified in the Copyright Act and upheld by multiple Circuit Courts and the Supreme Court, as set forth above.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion and dismiss the Complaint with prejudice and without leave to amend.

Dated:  December 22, 2022                     Respectfully Submitted,

**SMITHDEHN LLP**

/s/ Russell Smith
Russell A. Smith
Admitted *Pro Hac Vice*
New York Bar No. 2063378
654 San Juan Avenue
Venice Beach
Los Angeles, California, 90291
Telephone: (917) 239-5047
rsmith@smithdehn.com

**HOUSTON HARBAUGH, P.C.**

Henry Sneath
sneathhm@hh-law.com
PA ID No. 40559

Corey A. Bauer
bauerca@hh-law.com
PA ID No. 324632
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-2216

*Attorneys for Defendants Netflix Inc.*
*and Royal Goode Productions, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MOLLY CRAMER,                         )
                                      )
                                      )
                    Plaintiff,        )
                                      )   Civil Action No. 3:22-cv-131
v.                                    )   Judge Stephanie L. Haines
                                      )
NETFLIX, INC. and                     )
ROYAL GOODE PRODUCTIONS, LLC,         )
                                      )
                   Defendants.        )
                                      )

## CERTIFICATE OF SERVICE

I, Russell Smith, counsel for the Defendants admitted *pro hac vice,* hereby certify that

a true and correct copy of the Defendants' Brief in Support of their Motion to Dismiss has

been served on all parties of record via the Western District's Electronic Case Filing System

on this 22nd day of December, 2022.

Dated: December 22, 2022                    Respectfully Submitted,

                                            **SMITHDEHN LLP**

                                            /s/ Russell Smith
                                            Russell A. Smith
                                            Admitted *Pro Hac Vice*
                                            New York Bar No. 2063378
                                            654 San Juan Avenue
                                            Venice Beach
                                            Los Angeles, California, 90291
                                            Telephone: (917) 239-5047.
                                            rsmith@smithdehn.com

                                            **HOUSTON HARBAUGH, P.C.**

                                            Henry Sneath
                                            sneathhm@hh-law.com

PA ID No. 40559
Corey A. Bauer
bauerca@hh-law.com
PA ID No. 324632
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-2216

*Attorneys for Defendants Netflix Inc.*
*and Royal Goode Productions, LLC*