IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOLLY CRAMER, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> )  Civil Action No. 3:22-cv-131 |
| v. | )  Judge Stephanie L. Haines <br> ) |
| NETFLIX, INC. and <br> ROYAL GOODE PRODUCTIONS, LLC, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## DEFENDANTS' SUPPLEMENTAL BRIEF

**SMITHDEHN LLP**

Russell A. Smith
Admitted *Pro Hac Vice*
New York Bar No. 2063378
654 San Juan Avenue
Venice Beach
Los Angeles, California 90291
Telephone: (917) 239-5047
rsmith@smithdehn.com

**HOUSTON HARBAUGH, P.C.**

Henry Sneath
sneathhm@hh-law.com
PA ID No. 40559
Corey A. Bauer
bauerca@hh-law.com
PA ID No. 324632
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-2216

*Attorneys for Defendants Netflix Inc. and Royal Goode Productions, LLC*

At the direction of this Court, Defendants Netflix, Inc. ("Netflix") and Royal Goode Productions, LLC ("RGP") (collectively, the "Defendants"), respectfully submit this Supplemental Brief to address the impact on this case of the recent Supreme Court decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Lynn Goldsmith et al.*, 143 S. Ct. 1258 (2023) ("*Warhol*"). As discussed below, the *Warhol* decision confirms that because Defendants' inclusion of Plaintiff Cramer's tattoo (the "Tattoo") in the Tiger King series (the "Series") as a form of social commentary and biographical reportage about the "Joe Exotic phenomenon" has a distinctly different purpose from the Plaintiff's use of the Tattoo to promote her tattoo parlor, the first fair use factor under 17 U.S.C. §107 weighs heavily in favor of fair use here. Motion Brief at pp. 1-4, 6-7; Reply at pp. 3, 6-7.

In *Warhol*, artist Andy Warhol created unauthorized works based on Goldsmith's photographs of the musician Prince. In 2016, the Andy Warhol Foundation ("AWF") licensed one of these works to Condé Nast for a magazine article about Prince. Goldsmith had previously licensed her photo to other magazines for articles about Prince. Goldsmith claimed copyright infringement; AWF argued fair use. *Warhol* at 1266, 1288.

The Court held that, under the first fair use factor, the critical consideration is whether the allegedly infringing work has a "further purpose or different character" from the original. *Id*. at 1274. The Court focused on the narrow purpose of AWF's challenged use—AWF's commercial licensing of the Warhol image for magazine publication—and held that Goldsmith's original photograph of Prince had substantially the same purpose: commercial licensing to magazines. Thus, on the facts before the Court, the first factor weighed against fair use. *Id*. at 1280. Importantly, the Court stressed that its holding in *Warhol* is quite narrow in its scope.[1]

---

[1] "In this Court, the sole question presented is whether the first fair use factor, 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes,' §107(1), weighs in favor of AWF's recent commercial licensing to Condé Nast. *On that narrow issue, and limited to the*

Where a defendant's use has a different purpose from the original, however, the fair use analysis differs. *Id*. at 1277, n.8 (reaffirming Court's analysis of the first factor in *Google LLC v. Oracle America, Inc.*, 593 U. S.\_\_\_ (2021), where defendant's use of plaintiff's software differed from original use). Specifically, the Court stated:

> In a broad sense, a use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create. *See Campbell*, at 579; *Authors Guild v. Google, Inc.*, 804 F. 3d 202, 214 (CA2 2015) (Leval, J.) ("The more the appropriator is using the copied material for new, transformative purposes, the more it serves copyright's goal of enriching public knowledge and the less likely it is that the appropriation will serve as a substitute for the original or its plausible derivatives, shrinking the protected market opportunities of the copyrighted work").

*Warhol* at 1276.

In addition, the Court reaffirmed that Section 107's "preamble" uses (i.e., criticism, comment, news reporting, teaching ..., scholarship, or research) are the types of copying most commonly found to be fair use. *Warhol* at 1274. The Court also made clear that, while targeting the original work weighs in favor of fair use, it is not required. *Id*. at 1285, n.21. Finally, the Court reaffirmed its holding in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164 (1994) ("*Campbell*") that "a use's transformativeness may outweigh its commercial character." *Warhol* at 1280.[2]

---

*challenged use*, the Court agrees with the Second Circuit: The first factor favors Goldsmith, not AWF." *Warhol* at 1266 (emphasis added).

[2] *See also* 143 S. Ct. at 1276 ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."); *id.* ("the commercial nature of the use is not dispositive."); *id.* at 1299 (Gorsuch, J. concurring); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021).

As stated in our previous memoranda,[3] it is beyond dispute that plaintiff Cramer used her copyrighted work—a Tattoo—in her social media accounts for the sole purpose of promoting her tattoo services and raising funds. [Motion Brief at p. 3; Reply at p.6]. By contrast, the Series is a multi-hour documentary, in which the Defendants use the Tattoo for the completely different purpose of making a larger social commentary about millions of people's fixation, and in some cases obsession, about "Joe Exotic," the colorful, convicted animal abuser and attempted murderer. [Reply at pp. 6,7].

Moreover, the Court in *Warhol* also reaffirmed the principle that "a use may be justified because copying is reasonably necessary to achieve the user's new purpose." *Id.* at 1276 *citing Campbell*. Instructive is the Court's citation with approval of *Núñez v. Caribbean Int'l News Corp.*, 235 F. 3d 18, 21–23 (1st Cir. 2000). *See Warhol* at 1275, n. 5. In *Núñez*, the defendant newspaper used the plaintiff professional photographer's work not only to "inform" the public, but also to "gain commercially." *Id.* at 22. Nevertheless, the First Circuit ruled in favor of fair use, noting that the newspaper was not competing with the plaintiff photographer and was using his photograph for a new and transformative purpose:

> [W]hat is important here is that plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper; the former use, not the latter, motivated the creation of the work. Thus, by using the photographs in conjunction with editorial commentary, [the defendant] did not merely "supersede the objects of the original creation[s]," but instead used the works for "a further purpose," giving them a new "meaning, or message." *Campbell,* 510 U.S. at 579, 114 S.Ct. 1164.

 *Núñez* at 23.

As in *Núñez*, the Defendants here do not compete with the Plaintiff in any way. Moreover, Defendants used the photograph of the Tattoo for a new and further purpose of social commentary and biographical reporting, namely as part of the documentary narrative

---

[3] *See* Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14) ("Motion") and Defendants' Reply Memorandum in Support of Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 28) ("Reply")

of Joe Exotic's biography, which includes reporting on fans he has attracted. [Motion Brief at pp. 9,10; Reply at p.7]. And, the Plaintiff's Tattoo appears for 2.2 seconds as part of a montage that (a) provided social commentary on how Joe Exotic had entered the zeitgeist, and (b) supported the narrative of Joe Exotic's fame." [Reply at p.3].

*Warhol* supports a finding of fair use in this case for yet another reason. In *Warhol*, the income streams for the original use and the secondary use at issue were virtually the same. *Warhol* at 1272. In contrast, the commercial revenue streams the Plaintiff and the Defendants rely upon are entirely distinct. The Plaintiff sells tattoos and gift certificates for tattoos. [Motion Brief at pp. 1, 3; Reply at p.6]. Netflix is paid through subscriptions to view films and television programming. *See* Complaint (ECF No. 1) at ¶7.

Accordingly, the Defendants' distinct and transformational use of the Plaintiff's Tattoo "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message" and satisfies the transformativeness test laid down in *Campbell* and reaffirmed in *Warhol*. *See Campbell* at 579; *Warhol* at 1274, 1292, 1299.

## CONCLUSION

The *Warhol* decision, and the decisions cited by the Court in *Warhol*, represent a continuation and a restatement of longstanding legal principles of fair use that form the basis for the Defendants' Motion to Dismiss. The Defendants respectfully renew their request that the Motion be granted and the Complaint be dismissed in its entirety, with prejudice.

| | |
|---|---|
| Dated: June 15, 2023 | Respectfully Submitted, |

**SMITHDEHN LLP**

/s/ Russell Smith
Russell A. Smith
Admitted *Pro Hac Vice*
New York Bar No. 2063378
654 San Juan Avenue
Venice Beach
Los Angeles, California, 90291
Telephone: (917) 239-5047
rsmith@smithdehn.com

**HOUSTON HARBAUGH, P.C.**

Henry Sneath
sneathhm@hh-law.com
PA ID No. 40559
Corey A. Bauer
bauerca@hh-law.com
PA ID No. 324632
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-2216

*Attorneys for Defendants Netflix Inc. and Royal Goode Productions, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MOLLY CRAMER,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC. and<br>ROYAL GOODE PRODUCTIONS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:22-cv-131<br>) Judge Stephanie L. Haines<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I, Russell Smith, counsel for the Defendants admitted *pro hac vice,* hereby certify that a true and correct copy of the Defendants' Supplemental Brief has been served on all parties of record via the Western District's Electronic Case Filing System on this 15th day of June 2023.

Dated: June 15, 2023

Respectfully Submitted,

**SMITHDEHN LLP**

/s/ Russell Smith
Russell A. Smith
Admitted *Pro Hac Vice*
New York Bar No. 2063378
654 San Juan Avenue
Venice Beach
Los Angeles, California, 90291
Telephone: (917) 239-5047.
rsmith@smithdehn.com

**HOUSTON HARBAUGH, P.C.**

Henry Sneath
sneathhm@hh-law.com
PA ID No. 40559

        Corey A. Bauer
        bauerca@hh-law.com
        PA ID No. 324632
        Three Gateway Center
        401 Liberty Avenue, 22nd Floor
        Pittsburgh, Pennsylvania 15222
        Telephone: (412) 288-2216

        *Attorneys for Defendants Netflix Inc.*
        *and Royal Goode Productions, LLC*